IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DOLANTRY PRODUCTIONS and SEAN BRIAN SANTRY a/k/a Sean Brian, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| CHARLES POWERS, et al., | : : : | CIVIL ACTION NO. 1:15-CV-0026-AT |
| Defendants. | : | |

## ORDER

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction [Doc. 6]. For the following reasons, the Court **DENIES** Plaintiffs' Motion, without a hearing.

### I.   BACKGROUND[1]

Plaintiffs filed this lawsuit in January 2015, alleging that Defendants infringed their copyright in a reality television series entitled, "Sky Guys." Plaintiffs allegedly entered into agreements with Defendants regarding the production of Sky Guys. Defendant Michael Greene allegedly agreed to invest $50,000 into the production of Sky Guys. (Compl. ¶ 24; Mot. Prelim. Inj. Ex. B,

---

[1] The facts of this case are not contained in a verified pleading or affidavit or in an authenticated document. This background statement is thus only meant to provide a context for this dispute. Plaintiffs have offered no competent evidence from which the Court could grant a motion for preliminary injunction.

Doc. 6-7 at 5-7.)  Mr. Greene and Defendant Nancy Greene then allegedly entered into a "Confidentiality Non-Disclosure Agreement" regarding the production of Sky Guys.  (Compl. ¶ 25; Mot. Prelim. Inj. Ex. C.)  Plaintiffs also allegedly registered Sky Guys with the Writers Guild of America, West, Inc. and with the United States Copyright Office (Compl. ¶¶ 26-27; Mot. Prelim. Inj. Exs. D-E, Doc. Doc. 6-4; Doc. 6-3.)

According to Plaintiffs, Defendants Charles Powers and Michael Greene "sabotag[ed] the production of 'Sky Guys'" and subsequently "attempt[ed] to extort Plaintiffs' for the finished production."  (Compl. ¶ 5.)  Plaintiffs do not provide, in their Complaint any specific facts regarding Defendants' misconduct.  In their motion, they assert that Defendants hired their own staff, who were "inexperienced and unprofessional."  (Mot. Prelim. Inj. at 7, Doc. 6.)  Otherwise, Plaintiffs have offered no specific facts regarding Defendants' mishandling of the production.  Plaintiffs were allegedly able to salvage Sky Guys.

Plaintiffs then allege that when Defendants learned that Sky Guys had been salvaged, Defendants "began to conspire against Plaintiffs," "stole copies of the unfinished production, added their business logo, and began to market 'Sky Guys' as their own work."  (Compl. ¶¶ 32-33.)  According to Plaintiffs, Defendants (1) "convinced several of Plaintiffs business contacts to cease doing business with Plaintiffs" and (2) attempted to "extort all remaining copies of 'Sky Guys', any additional footage, Plaintiffs' intellectual property rights, and an additional sum

2

of $75,000 in exchange for reimbursement for all overages during production. (Compl. ¶¶ 34-35.)

Plaintiffs attach to their motion an unauthenticated letter from Michael Greene in which he expresses serious concerns regarding the delays in completing Sky Guys. The letter details facts which Greene characterized as "quite disturbing" including that (1) Plaintiffs had failed to register a trademark for Sky Guys; (2) "several industry professionals . . . have asked to have their names, companies, etc.[] removed from any association with [Plaintiffs]"; and (3) Plaintiff Santry had been dealing with Greene under an alias, naming his house as his studio. (Mot. Prelim. Inj. Ex. G, Doc. 6-5 at 1-2.) Greene then proposed that Plaintiffs send the full completed production to him for a preview. Greene agreed to reimburse the costs associated with production, with several caveats, and agreed that Plaintiff Santry would "remain credited as the producer." (*Id.* at 2.) Greene concluded by noting that the terms of his proposal were not negotiable, and that if Plaintiffs refused to agree to them, they should send him $75,000. Regardless of what Plaintiffs decided to do, Greene insisted that Greene disassociate with him or his business associates.

Plaintiffs assert a copyright infringement claim for the alleged publication of a "teaser/trailer" on Defendants' website, making "illegal copies of 'Sky Guys', and marketing these copies "to potential investors under Defendants' own brand." (Compl. ¶ 38.) Plaintiffs also allege several breach of contract claims

3

(Counts II-V), a civil conspiracy claim (Count VI), a breach of fiduciary duty claim (Count VII), and a tortious interference with business relations claim (Count VIII). Although perhaps presumed, Plaintiffs do not allege that Defendants are actively attempting to capitalize on the Sky Guys production, or any facts from which the Court could infer that Defendants continue to engage in the allegedly improper conduct identified in the Complaint and motion.

## II.   LEGAL STANDARD

The grant of "a preliminary injunction in advance of trial is an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). To warrant such extraordinary remedy, the moving party must show that:

> (1) [it has] a substantial likelihood of success on the merits;
> (2) irreparable injury will be suffered unless the injunction issues;
> (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
> (4) if issued, the injunction would not be adverse to the public interest.

*Id.* (quoting *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F. 3d 1177, 1193–94 (11th Cir. 2009)). Although to be entitled to a preliminary injunction, the movant must satisfy each of these four elements, "[a] showing of irreparable harm is 'the sine qua non of injunctive relief.'" *N.e. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)).

4

**III.   ANALYSIS**

The Court **DENIES** Plaintiffs' motion for at least two reasons.  First, the evidence attached to Plaintiffs' motion fails to suggest they have a substantial likelihood of success on the merits.  Plaintiffs do not provide an affidavit in support of any of their exhibits and did not file a verified complaint.  *See* Wright & Miller, 11A Federal Practice & Procedure § 2949 (3d ed. 2015) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.") (collecting cases).  And even if Plaintiffs were to produce an affidavit attesting to the factual assertions in their Complaint or motion, such factual assertions do not provide such evidence for the Court to render any conclusion regarding Plaintiffs' likelihood of success on the merits of their claims.  As Plaintiffs assert, their "primary claim in this lawsuit is straightforward:  Defendants entered into valid, binding agreements with Plaintiffs, all of which Defendants subsequently breached by refusing the complete the obligations."  (Doc. 6 at 9.)  Plaintiffs have failed to identify the specific breaches of any contracts, except a reference to the hiring of "inexperienced and unprofessional" staff.  The Court has no basis for assessing the likelihood of success based on these unsupported, general allegations of wrongdoing.

Second, Plaintiffs have not indicated a real threat of irreparable injury.  To the extent Plaintiffs suffered monetary losses resulting from a breach of contract,

5

such losses can typically be remedied with a monetary award and are thus not irreparable.  Plaintiffs' only potential aspect of irreparable harm asserted in their motion is a vague assertion that "rumors [have] spread by Defendants."  (Mot. Prelim. Inj. at 11.)  The Court could not, on this unsubstantiated assertion, justify holding a hearing to determine whether an injunction is necessary to avoid irreparable reputational harm.[2]  Moreover, Plaintiffs suggest that their reputation was also harmed by "issues with pending litigation."  (*Id.*)  Plaintiffs offer no factual basis to assess the extent to which Defendant's alleged misconduct, rather than this unidentified "litigation" with unidentified parties, is actively causing reputational harm such that an injunction is necessary.

Because of Plaintiffs' inadequate presentation on their papers of their claims for extraordinary, injunctive relief, the Court sees no basis to hold a hearing.  Plaintiffs are, however, free to collect actual evidence of wrongdoing sufficient to support their extraordinary request for injunctive relief and file a renewed motion for preliminary injunction at the appropriate time.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

---

[2] Plaintiffs do not meaningfully argue that they will suffer irreparable harm by Defendants' continued use of their copyrighted material, although the Court could imagine such being the case.  Oddly, however, Plaintiffs do not appear to allege, and they provide no evidence to support, that Defendants are actively engaged in copyright infringement or likely to engage in such infringement in the future.

**IT IS SO ORDERED** this 24th day of June, 2015.

_____
**Amy Totenberg**
**United States District Judge**